IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| HART CHESNUTT, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 5:22-CV-110-H-BQ |
| | § | |
| COVINGTON SPECIALTY INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Hart Chesnutt, LLC (Hart Chesnutt) filed a claim with its commercial insurance carrier, Defendant Covington Speciality Insurance Company (Covington), concerning alleged hail and wind damage to Hart Chesnutt's property. Pl.'s Original Pet. 3–4, ECF No. 1-3. Covington refused to pay the claim because its adjuster found that the roof damage resulted from "deferred maintenance, wear and tear and improper installation," and any hail impacts were "cosmetic in nature." Pl.'s App. 6, ECF No. 17-1. Hart Chesnutt eventually filed suit against Covington, asserting claims for breach of contract and violations of the Texas Insurance Code and seeking a declaratory judgment as to its rights under the policy. Pl.'s Original Pet. 6–7.

Covington now asks the Court to (1) compel Hart Chesnutt to proceed with the appraisal process in accordance with the insurance policy, and (2) abate the case pending the appraisal's completion. Def.'s Mot. 2–4, ECF No. 11. Hart Chesnutt opposes Covington's requests, arguing that the dispute concerns the policy's *coverage*—not the amount of loss—and an appraisal is

---

[1] The Honorable James Wesley Hendrix, United States District Judge, originally referred this case to the undersigned for pretrial management. ECF No. 4. The parties, however, consented to proceed before a magistrate judge and Judge Hendrix has now transferred it for disposition, including trial. ECF No. 18.

therefore inappropriate. Pl.'s Resp. 3–4, ECF No. 17. And, even if it must obtain an appraisal, Hart Chesnutt asserts the Court should not abate the litigation. *Id.* at 8.

Because the Court concludes that Covington has properly invoked the contract's appraisal provision, it **GRANTS** Covington's Motion to Compel and **ORDERS** Hart Chesnutt to submit to the appraisal process. The Court **DENIES** Covington's Motion to Abate and will enter a separate order setting forth scheduling deadlines that accommodate the appraisal process.

## I. Background

### A. Origin of the Dispute

Hart Chesnutt alleges that on May 20, 2020, its property located at 524 East 46th Street in Lubbock, Texas 79404 (Property) suffered wind and hail damage. Pl.'s Original Pet. 3. The Property was insured by Covington on the date of the purported damage. ECF No. 12, at 3 ¶ 6. Hart Chesnutt submitted a claim for the damage, and Covington subsequently assigned an adjuster and engineer to inspect the Property. *See* Pl.'s Original Pet. 3.

In a letter dated October 27, 2020, Covington advised Hart Chesnutt that the damage to the Property's metal roof was excluded from coverage because Covington determined the damage was the result of "deferred maintenance, wear and tear and improper installation," and any hail impacts were "cosmetic in nature." Pl.'s App. 6. As to damage incurred to property other than the roof (including metal siding and vents), Covington determined it owed Hart Chesnutt $0.00 because the total estimated repair costs did not exceed the policy's deductible. *Id.* at 7.

Hart Chesnutt then retained a metallurgical engineer, as well as a causation and damages building consultant, who opined that hail caused the roof damage and Covington underpaid the claim by $188,765.61. Pl.'s Original Pet. 4. In response to Hart Chesnutt's written demand (which included the sum estimated by Hart Chesnutt's consultant), Covington hired a second engineer to

reinspect the Property. *See* Pl.'s App. 8–11. Ultimately, Covington did not alter its original assessment (*id.* at 12–13), prompting Hart Chesnutt to file this action. Hart Chesnutt filed suit in the 99th Judicial District Court, Lubbock County, Texas, and Covington removed the case to this Court. ECF No. 1, at 1.

### B. Parties' Arguments

Prior to filing the instant motion, counsel for Hart Chesnutt and Covington conferred in accordance with Fed. R. Civ. P. 26(f), and Covington made a written demand for appraisal under the insurance policy's terms. Def.'s Mot. 2; *see* ECF No. 12, at 2. Covington contends that an appraisal clause, once invoked, is mandatory. Def.'s Mot. 2 (citing *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 895 (Tex. 2009)). Moreover, Covington asserts that, assuming it timely invoked the appraisal clause and otherwise complied with it, the Court lacks discretion to deny a motion to compel appraisal. *Id.* at 2–3 (citing *In re Allstate Cnty. Mut. Ins.*, 85 S.W.3d 193, 196 (Tex. 2002)). Covington classifies the dispute as one involving "the amount of loss – with current repair costs differing between the parties by nearly $200,000." *Id.* at 3. In Covington's view, appraisal is therefore appropriate. *See id.*

Consequently, Covington moves to abate this action pending an appraisal. *Id.* Covington alleges that under the policy's provisions, an appraisal is a condition precedent to suit; therefore, "the [p]olicy requires abatement . . . and this Court should enforce the [p]olicy as written." *Id.* at 4. Abatement also serves the interests of judicial economy, Covington argues, as "there is no further need for Court intervention or the expense of discovery" in the event the appraisal successfully resolves the dispute between the parties. *Id.*

3

Hart Chesnutt, not surprisingly, disagrees with Covington's assessment. Pl.'s Resp. 3.[2] It claims that this dispute involves more "than a straightforward disagreement over the appropriate cost of covered repairs and the 'amount of loss' – it centers squarely on the issue of *coverage*, which is not appropriate for appraisal." *Id.* at 4. That is, "[i]f, as [Hart Chesnutt] contends, [Covington] failed to conduct . . . a full, fair and reasonable investigation of the claim, and that the damages are covered under the policy," Hart Chesnutt asserts it "is entitled to recover its full measure of contract damages . . . ." *Id.* In support, Hart Chesnutt cites to Covington's statement of the nature of the case in the Joint Status Report: "Covington denies any liability for the causes of action asserted by [Hart Chesnutt] . . . . [T]he amount and coverage available for the claimed damage to the roof is in dispute. Covington asserts the damage to the roof to be unrelated to any storm event and cosmetic in nature." ECF No. 12, at 1–2.

Hart Chesnutt further contends that Covington has waived its right to an appraisal. Pl.'s Resp. 5. According to Hart Chesnutt, "[w]aiver of an appraisal clause occurs if: (1) the parties previously reached an 'impasse'; (2) following the impasse, one party unreasonably delayed seeking appraisal; and (3) that party's delay was prejudicial." *Id.* (quoting *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 409, 407–12 (Tex. 2011)). Hart Chesnutt asserts that given the significant time lapse, the number of inspections conducted, and Covington's unwavering denial of payment, the parties have effectively reached an impasse. *See id.* at 6. Hart Chesnutt submits that the parties reached an impasse in October 2020—when Covington first denied its claim—and therefore Covington's July 2022 demand for an appraisal constitutes an unreasonable delay. *Id.* Finally, Hart Chesnutt maintains it will be prejudiced by participating in

---

[2] Hart Chesnutt filed two copies of its Response, with the only appreciable difference being the addition of counsel's electronic signature. ECF Nos. 16, 17. The Court cites to the second-filed Response. ECF No. 17.

an appraisal, as it will incur additional expense and the appraisal process will result in further interruption of its efforts to obtain relief. *Id.* at 7–8.

Even if the Court compels an appraisal, however, Hart Chesnutt alleges that abatement of the proceedings would be inappropriate. *Id.* at 8. In Hart Chesnutt's view, an "[a]ppraisal will not resolve the other issues, including [its] extra-contractual claims; thus, the litigation should be allowed to continue." *Id.* at 8–9.

## II.   Appraisal Clauses and the Scope of Appraisals

"Appraisals are a 'means of resolving disputes about the amount of loss for a covered claim.'" *Salas Realty LLC v. Transp. Ins. Co.*, 425 F. Supp. 3d 751, 754 (N.D. Tex. 2019) (quoting *Johnson*, 290 S.W.3d at 889). Insurance policies often contain appraisal clauses, which "are generally enforceable, absent illegality or waiver." *Universal Underwriters*, 345 S.W.3d at 407.

In Texas, appraisals are limited to determining the amount of loss—liability is an issue reserved for the courts.[3] *Johnson*, 290 S.W.3d at 889–90. Although "[t]he line between liability and damage questions" is not always clear (*id.* at 890), the Texas Supreme Court has provided courts general guidance for making this determination.

In *Johnson*, just as in the case at bar, the insured claimed a covered loss for hail damage to a roof. *Id.* at 887. The insurance company's "inspector concluded that hail had damaged only the ridgeline of roof," while the insured's contractor "concluded the entire roof needed to be replaced." *Id.* In accordance with her policy, the insured demanded an appraisal, but the insurance company

---

[3] Neither party specifically addresses the issue of what state's law applies in evaluating appraisal clauses, but they apparently agree that Texas substantive law governs this action. *See* Def.'s Mot. 2–3; Pl.'s Resp. 4–5; Pl.'s Original Pet. 1. Because the parties have not made choice of law an issue before the Court, or offered a reason to conclude otherwise, the Court will similarly apply Texas law. *See, e.g., Miller v. Ret. Sys. Grp., Inc.*, No. H-09-834, 2012 WL 13156988, at *11 n.105 (S.D. Tex. Mar. 2, 2012), *R. & R. adopted by* 2012 WL 13156809 (S.D. Tex. Apr. 3, 2012) ("Because neither party addresses choice of law, the court assumes that the parties agree Texas law applies to the contract cause of action.").

5

refused, claiming that the parties disagreed as to the cause of the damage—not the amount of loss—and an appraisal was therefore inappropriate. *Id.* at 888.

The Texas Supreme Court held that although determining the amount of hail damage necessarily required the appraiser to decide causation, appraisal was nevertheless warranted. *See id.* at 893, 895. In so holding, the court defined the scope of an appraisal, explaining that "when different causes are alleged for a single injury to property, causation is a liability question for the courts." *Id.* at 892. But "when different types of damage occur to different items of property," i.e., a divisible injury, "appraisers may have to decide the damage caused by each before the courts can decide liability." *Id.* Similarly, appraisers may distinguish between "loss due to a covered event" and that "from a property's pre-existing condition." *Id.* That is, "appraisers can decide the cost to repair each [damaged item] without deciding who must pay for it." *Id.* at 894.

In the case of divisible damage, for example, appraisers can assess causation when evaluating a property that has sustained covered damages but also has pre-existing wear and tear (i.e., damage not covered by most insurance policies). *Id.* at 892–93. The Texas Supreme Court reasoned that if appraisers could not "allocate damages between covered and excluded perils," appraisal clauses would be "largely inoperative." *Id.*

As particularly relevant to this case, the Texas Supreme Court also observed that the appraisal had not yet occurred. *Id.* at 894. The court explained that "unless the 'amount of loss' will never be needed (a difficult prediction when litigation has yet to begin), appraisals should generally go forward without preemptive intervention by the courts." *Id.* at 895. This is because a court can always review an appraisal and remedy any flaws should the appraisal exceed the scope of the appraiser's authority. *Id.*

6

### III. Discussion

#### A. Appraisal is Appropriate

Hart Chesnutt apparently does not dispute that the policy supplies the parties with a right to demand appraisal. *See* Pl.'s Resp. 1–9. Thus, the Court considers only whether compelling Hart Chesnutt to participate in the appraisal process at this juncture is appropriate. *See Johnson*, 290 S.W.3d at 895; *see also* Def.'s Mot. 3 ("There is a dispute as to the amount of loss . . . ."); Pl.'s Resp. 4 (Covington "has made its position clear from the inception of this claim—they concluded that the damage to [Hart Chesnutt's] roof is not covered under the [p]olicy, *regardless* of any amount to repair or replace it."). The Court concludes that there is an amount-of-loss dispute, and appraisal is therefore required.

Covington determined that the Property's metal siding and vents sustained hail damage. Pl.'s App. 6. But Covington declined to pay for the alleged damage to the Property's roof because it found the damage resulted from uncovered events, including (1) "deferred maintenance," (2) "wear and tear," (3) "improper installation," and (4) hail impacts that were "cosmetic in nature." *Id.* The amount of covered loss is at least partially in dispute because Covington acknowledges that the Property's roof (as well as the metal siding and vents) sustained hail impacts—it merely disagrees with the extent of damage. *See, e.g., Mattox v. Safeco Ins. Co. of Ind.*, No. 1:16-CV-1037-LY, 2016 WL 10519944, at *2 (W.D. Tex. Nov. 28, 2016) (expressing doubt as to whether "a disagreement over causation truly exist[ed], given the fact that [insurer] . . . stated that it believe[d] at least some of the damage in question was caused by hail").

Nevertheless, Hart Chesnutt contends that the bases for Covington's denial of its claim "center[] squarely on the issue of coverage." Pl.'s Resp. 4 (emphasis omitted). In *Johnson*, however, the Texas Supreme Court expressly held that an appraiser may allocate damage between

7

a covered peril and those that are not, such as wear and tear. 290 S.W.3d at 892–93 (citing *Gulf Ins. Co. of Dall. v. Pappas*, 73 S.W.2d 145, 146–47 (Tex. Civ. App.—San Antonio 1934, writ ref'd)). The fact that an appraiser may have to differentiate damage caused by hail versus wear-and-tear or improper installation is not a reason to decline requiring an appraisal. *See id.* at 895; *TMM Inv., Ltd. v. Oh. Cas. Ins. Co.*, 730 F.3d 466, 473, 475 (5th Cir. 2013) (upholding an appraisal attributing roof damage "to improper installation" and damage to a skylight "to rocks thrown from below," explaining that "[t]o the extent . . . appraisers merely distinguish[] damage caused by pre-existing conditions from damage caused by [a] storm, they . . . act[] within their authority"). That is, Hart Chesnutt "cannot avoid appraisal at this point merely because there might be a causation question that exceeds the scope of appraisal." *Johnson*, 290 S.W.3d at 893. Should the appraisal be flawed in some way, e.g., by determining causation, the Court can remedy that at a later date. *Id.* at 895.

Ultimately, "someone must determine the amount of loss." *Id.* (internal quotation marks omitted). Where, as here, an appraisal has not yet occurred, the Court concludes that it should "go forward without preemptive intervention," as provided by the express terms of the policy. *Id.*; *see, e.g., TMM Inv.*, 730 F.3d at 475 (finding persuasive "the closeness of the facts in *Johnson* to those at bar—both involved roofs damaged in part by hailstorms," and reasoning that such fact "militate[d] in favor of arriving at a holding similar to the one arrived at by the *Johnson* court"); *Duncan*, 2021 WL 2376609, at *3 ("In accordance with the express contractual language of the homeowners policy at issue, an appraisal shall take place to determine the amount of loss."); *Tri Invs., Inc. v. United Fire & Cas. Co.*, No. 5:18-CV-116, 2019 WL 13114312, at *3–4 (S.D. Tex. July 15, 2019) (granting insurer's motion to compel appraisal, where dispute involved both coverage and amount-of-loss and "nothing in the record establishe[d] that the amount of loss was

unequivocally established"); *Abbey on Preston H.O.A. v. Admiral Ins. Co.*, No. 3:13-CV-0102-N, 2013 WL 12143827, at *1 (N.D. Tex. May 30, 2013) (compelling appraisal that insurer demanded during Rule 26(f) conference, where although insured argued the parties disagreed "only whether [insurer] covered the loss or not," court found there was "still a disagreement as to 'the amount of loss,' [thereby] implicating the appraisal provision"). The parties may then litigate causation issues, if necessary. *See Johnson*, 290 S.W.3d at 892, 894; *In Re S. Ins. Co.*, No. 09–11–00022–CV, 2011 WL 846205, at *1 (Tex. App.—Beaumont Mar. 10, 2011, no pet.) ("[F]ollowing the Supreme Court's decision in *Johnson*, we conclude that under the circumstances the appraisal should be determined as an initial matter and the parties may then litigate causation questions.").

### B. Covington has not Waived its Right to Appraisal

Having determined that the policy terms and applicable law provide for an appraisal, the Court must examine whether Covington has waived its right under the circumstances presented herein. To establish waiver of the right to appraisal, a party must demonstrate that: (1) the parties have reached an impasse; (2) after reaching an impasse, one party did not invoke appraisal within a reasonable time; and (3) the other party will suffer prejudice as a result of the delay. *Universal Underwriters*, 345 S.W.3d at 407–12 (setting out elements of waiver); *see JM Walker LLC v. Acadia Ins. Co.*, 356 F. App'x 744, 748 (5th Cir. 2009) (per curiam) (describing acts of waiver as "those that are reasonably calculated to make the assured believe that a compliance on his part with the stipulations providing the mode of proof of loss, and regulating the appraisement of the damage done, is not desired, and that it would be of no effect if observed by him" (internal quotation marks and citation omitted)). "'Waiver is an affirmative defense,' and the party alleging waiver 'bears the burden of proof.'" *Martinez v. Nationwide Gen. Ins. Co.*, No. 3:19-CV-01541-

9

X, 2020 WL 3606399, at *2 (N.D. Tex. July 2, 2020) (quoting *JM Walker LLC*, 356 F. App'x at 748).

"Waiver is ordinarily a question of fact, but where the facts are admitted or clearly established, it becomes a question of law. The trial court may determine whether an appraisal has been waived as a matter of law at the preliminary stages of litigation." *Sanchez v. Prop. & Cas. Ins. Co. of Hartford*, No. H-09-1736, 2010 WL 413687, at *4 (S.D. Tex. 2010) (internal quotation marks and citations omitted).

The Court finds that Hart Chesnutt has not satisfied its burden of demonstrating each waiver element. As to the first element, the Texas Supreme Court defines an impasse as being "a mutual understanding that neither [party] will negotiate further" or when "*both* parties [become] . . . aware that further negotiations would be futile." *Universal Underwriters*, 345 S.W.3d at 409–10 (emphasis added). "If one party genuinely believes negotiations to be ongoing, it cannot have intended to relinquish its right to appraisal (unless it expressly waives it)." *Id.* at 409.

Hart Chesnutt maintains that "the parties reached an impasse when [Covington] made its original claim decision in October 2020." Pl.'s Resp. 6. However, Covington's October 27, 2020, letter ends with the following: "If you have available any information which has a bearing on the facts outlined above, please forward to our office for review and consideration." Pl.'s App. 7. Because this statement indicates Covington's willingness to continue negotiations related to the storm damage, the October 2020 letter "did not mark a point of impasse." *Vera v. Companion Prop. & Cas. Ins. Co.*, No. 5:15–CV–73, 2015 WL 12777394, at *2 (S.D. Tex. Aug. 27, 2015).

Even looking at the other events cited by Hart Chesnutt—Covington's March 11, 2022, affirmation of the October 2020 denial and Hart Chesnutt's filing of suit on April 7, 2022 (Pl.'s Resp. 6)—the Court cannot conclude the parties have reached an impasse. Covington's March

2022 letter again stated, in bold letters, that it was willing to consider additional information bearing on the amount of loss. Pl.'s App. 13. Hart Chesnutt contends that after Covington rejected its written demand for payment, it was "[l]eft with no other option" but to file suit. Pl.'s Resp. 6. "However, the existence of a dispute and the development of an impasse are two different things." *Vera*, 2015 WL 12777394, at *2 (internal quotation marks and citation omitted). Hart Chesnutt has submitted no evidence showing that this lawsuit rendered further negotiations futile. *Id.*; *see Martinez*, 2020 WL 3606399, at *3 (finding insurer had not established impasse based on insured's filing of suit).

Moreover, even if the parties have reached an impasse, Hart Chesnutt has failed to satisfy the second element, i.e., showing that Covington did not make its appraisal demand within a reasonable time. Hart Chesnutt alleges that Covington's "demand for appraisal was unreasonably delayed and only made in response to [Hart Chesnutt] filing suit." Pl.'s Resp. 6. Assuming, for the sake of analysis, that the parties reached an impasse on April 7, 2022—the day Hart Chesnutt filed suit—Covington made written demand within approximately three months. *See* ECF No. 12, at 2 ("Covington seeks to invoke the appraisal provision of the [p]olicy in an attempt to work to resolve the case without the need for further Court intervention," dated July 13, 2022.); *Universal Underwriters*, 345 S.W.3d at 408 (providing that "reasonableness must be measured from the point of impasse"). Further, Covington indicated in its Answer, filed in state court at the time Hart Chesnutt instituted this litigation, that invocation of the appraisal clause was an issue. *See* Def.'s Original Answer 4, ECF No. 1-6 ("Defendant specifically denies that all conditions precedent to recovery have been performed, waived or have occurred given Plaintiff's departure from the . . .

11

appraisal process under the insurance policy . . . ."). And notably, the appraisal clause does not contain a time limit for demanding appraisal. ECF No. 11-1, at 64.[4]

"[W]hile the time period may be instructive in interpreting the parties' intentions, it alone is not the standard by which courts determine the reasonableness of a delay." *Universal Underwriters*, 345 S.W.3d at 408. Based on the foregoing, the Court cannot conclude that Hart Chesnutt has demonstrated that Covington unreasonably delayed demanding appraisal. *See, e.g., Martinez*, 2020 WL 3606399, at *3 (determining insurer had not demonstrated insureds unreasonably delayed demanding an appraisal, where they "invoked appraisal within three to eleven months of" impasse, the policy did not contain a time limit for invocation, and the parties continued negotiations after insureds filed suit); *cf. Dwyer v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 565 F.3d 284, 288 (5th Cir. 2009) (explaining that when considering delay, courts should focus on the party's "knowledge and action—when [the party] knew that the appraisal clause could be invoked [and] whether it reacted timely to the knowledge"—and concluding that insurer's motion to compel appraisal filed five weeks after learning that insureds disputed only the amount-of-loss was not unreasonable delay); *Mattox*, 2016 WL 10519944, at *3 (finding that insurer's appraisal demand made one month after reaching impasse was not unreasonable delay).

Finally, and most significantly, Hart Chesnutt has not shown that it will be prejudiced by the appraisal process. Hart Chesnutt asserts that it "has already spent more than $9,000 to complete an independent investigation of its damages by a metallurgist after [Covington] wrongfully denied its claim." Pl.'s Resp. 8. According to Hart Chesnutt, it "will incur additional expense for appraisal, the process will result in months of additional delay, and potentially damage or reduce

---

[4] Because Covington did not attach a separately paginated appendix as required by Local Rule 7.1(i), page citations refer to the electronic page number assigned by the Court's electronic filing system.

[its] legal rights." *Id.* Hart Chesnutt also argues that Covington is using the appraisal process "to manipulate the litigation process to gain an unfair tactical advantage." *Id.*

The Court observes initially that the $9,000 expense Hart Chesnutt reports was incurred *prior* to any impasse. "However, the prejudice required to find a waiver must be following impasse and prior to invocation of the appraisal process; the prejudice must be *caused* by the unreasonable delay." *Engdorf v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:18-CV-4280, 2019 WL 7905458, at *3 (S.D. Tex. Dec. 6, 2019) (emphasis added); *see Tri Invs.*, 2019 WL 13114312, at *6 ("Prejudice is the harm caused by the insurer's delay in invoking the appraisal *following an impasse*.").

Further, "it is difficult to see how prejudice could ever be shown when the policy, like the one here, gives both sides the same opportunity to demand appraisal." *Universal Underwriters*, 345 S.W.3d at 412. If Hart Chesnutt truly sensed the parties had reached an impasse in October 2020—or even April 2022 when it filed suit—it could have invoked the appraisal clause and avoided any alleged prejudice. *Id.* Indeed, as Hart Chesnutt avers, "[m]any benefits of appraisal are lost or diminished if the appraisal is sought after the parties have already engaged in litigation." Pl.'s Resp. 7; *see Universal Underwriters*, 345 S.W.3d at 412 (opining that a party can "short-circuit potential litigation" by demanding appraisal and this option "should be pursued before resorting to the courts"). Thus, Hart Chesnutt has failed to demonstrate that it is prejudiced, either legally or financially, by any purported delay in Covington's appraisal demand. *See, e.g., Tri Invs.*, 2019 WL 13114312, at *6–7 (finding no prejudice where insured could have invoked appraisal clause and "fail[ed] to identify any expenses and fees that it incurred but would not have had to incur had appraisal been invoked" immediately upon impasse); *Mattox*, 2016 WL 10519944, at *3 (determining insureds had not shown prejudice, where they "had the opportunity to demand appraisal as soon as they disagreed with [insurer's] assessment of damages to their [rental]

13

property," and they could pursue claim for lost rental income in spite of appraisal process); *SPJST Lodge #154 v. Century Surety Co.*, No. 4:15-cv-710-O, 2015 WL 12699508, at *2 (N.D. Tex. Nov. 23, 2015) (reasoning that insureds' failure to demand appraisal "militate[d] against a finding of prejudice"); *Vera*, 2015 WL 12777394, at *3 (rejecting insured's prejudice argument, where insured did not invoke appraisal clause and insurer demanded appraisal before discovery commenced, thus minimizing expense to insured).

In sum, Hart Chesnutt has failed to demonstrate that Covington engaged in conduct evincing "intent, either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right" such that the Court can conclude Covington waived its right to invoke appraisal. *Universal Underwriters*, 345 S.W.3d at 407; *see JM Walker LLC*, 356 F. App'x at 748 ("Waiver is the intentional relinquishment of a known right."). The Court therefore concludes that Hart Chesnutt must submit to the appraisal process in accordance with the insurance policy's terms.

### C. The Court, in its discretion, will not require abatement

Covington asks the Court to abate this action pending the appraisal process, both because appraisal is a condition precedent to filing suit and for reasons of judicial economy. Def.'s Mot. 3–4. Hart Chesnutt opposes that request, arguing appraisal will not resolve all issues between the parties, including its "extra-contractual claims." Pl.'s Resp. 8.

As Covington notes, the insurance policy in this case contains a "no action" clause: "No one may bring legal action against us under this [policy] unless . . . [t]here has been full compliance with all of the terms of this" policy. ECF No. 11-1, at 71. In cases where the insurance policy contains a "no action" clause, courts typically abate the litigation. *See Johnson v. Liberty Mut. Fire Ins. Co.*, No. 4:14-CV-604, 2015 WL 11170153, at *2 (E.D. Tex. Oct. 30, 2015) ("In the case

of an insurer trying to enforce a condition precedent . . . a proper remedy is abatement—or a stay of the proceedings—rather than barring the claim." (alteration in original) (citation omitted)). On the other hand, "[f]ederal district courts sitting in diversity and applying Texas law have, in most cases, declined to abate litigation pending appraisal where questions of coverage remain," as in the case at bar. *Carter v. Underwriters at Lloyd's, London*, No. 7:17-cv-00127-O, 2018 WL 10483854, at *2 (N.D. Tex. July 27, 2018) (citing cases in support). Ultimately, courts retain discretion to abate proceedings pending appraisal. *See Allstate Cnty. Mut. Ins.*, 85 S.W.3d at 196 ("While the trial court has no discretion to deny the appraisal, the court does have some discretion as to the timing of the appraisal.").

Initially, the Court observes that the fact Hart Chesnutt failed to demand appraisal prior to filing suit does not, standing alone, require abatement. *Abbey on Preston*, 2013 WL 12143827, at *1. Hart Chesnutt filed suit before Covington invoked the appraisal clause—a provision that "is required only if one side requests it" and that "does not apply to every coverage situation." *Id.* That is, "the part of the policy that requires that 'all conditions be met' does not necessarily mean that the appraisal process need be completed for a policyholder to file suit." *Id.*

Moreover, Hart Chesnutt raises several extra-contractual claims that are not governed by the appraisal clause. *See* Pl.'s Original Pet. 4–7. And, as discussed above, the parties dispute coverage in addition to the amount-of-loss. *See id.* "Thus, the parties dispute [Covington's] liability no matter the result of the appraisal." *Abbey on Preston*, 2013 WL 12143827, at *1 (declining to abate case despite compelling appraisal). For these reasons, the Court **DENIES** Covington's Motion to Abate. *See, e.g.*, *Devonshire Real Estate & Asset Mgmt., LP v. Am. Ins. Co.*, No. 3:12-CV-2199-B, 2013 WL 12124308, at *5 (N.D. Tex. Mar. 26, 2013) (denying insurer's motion to abate where the amount-of-loss was only "one issue in dispute between the

parties" and "appraisal [would] not resolve the other issues"). The Court will, however, set dates in the scheduling order that reflect the parties' need to complete the appraisal process.

## IV. Conclusion

Hart Chesnutt must comply with the terms of its policy with Covington. The Court therefore **GRANTS** Covington's Motion to Compel Appraisal and **ORDERS** Hart Chesnutt to submit to the appraisal process in accordance with the policy's terms. The Court **DENIES** Covington's Motion to Abate proceedings and will enter an order setting forth scheduling deadlines in accordance with Fed. R. Civ. P. 16 that accommodate the appraisal process. The Court directs the parties to immediately begin the appraisal process and complete it as expeditiously as possible. **The parties shall file a joint notice thirty (30) days from the date of this Order advising the Court of the status of the appraisal.**

SO ORDERED.

Dated: August 17, 2022.

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE

16